Filed:  September 1, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Petitioner on Review,

v.

HEZAKIAH BENJAMIN BAKER,

Respondent on Review.

(CC 071766AFE; CA A137073; SC S058967)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 4, 2011.

Ryan Kahn, Assistant Attorney General, Salem, argued the cause for petitioner on review.  With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Garrett A. Richardson, Multnomah Defenders, Inc., Portland, argued the cause and filed the brief for respondent on review.

DE MUNIZ, C. J.

The decision of the Court of Appeals is reversed.  The judgment of the circuit court is affirmed.

*Appeal from Jackson County Circuit Court, Patricia Crain, Judge. 237 Or App 342, 240 P3d 735 (2010).

1

DE MUNIZ, C. J.

Defendant was charged, in Jackson County, with multiple counts related to the manufacture and possession of marijuana.[1]  Before trial, defendant moved to suppress evidence seized by Medford city police officers who, without a warrant, entered defendant's residence to investigate a 9-1-1 domestic disturbance call.  The trial court denied defendant's motion.  The Court of Appeals reversed and remanded, concluding that the warrantless entry of defendant's residence was not authorized under an "emergency aid exception" to the warrant requirement and thus violated defendants rights under Article I, section 9, of the Oregon Constitution.  *State v. Baker*, 237 Or App 342, 240 P3d 735 (2010).  We allowed the state's petition for review and, for the reasons set out below, reverse the Court of Appeals decision.

We take the facts from the record and the Court of Appeals' opinion.  In April 2007, an anonymous female called 9-1-1 and reported a domestic disturbance at a neighbor's house.  The caller stated that she could hear yelling and screaming coming

---

[1]       Defendant was charged with five marijuana- related crimes: (1) unlawful manufacture of marijuana within 1,000 feet of a school (ORS 475.858); (2) unlawful manufacture of marijuana -- substantial quality (ORS 475.856); (3) unlawful delivery of marijuana (ORS 475.860); (4) unlawful possession of marijuana (ORS 475.864); and (5) endangering the welfare of a minor (ORS 163.575) .  Defendant entered a conditional plea of guilty to counts three and five, and reserved the right to appeal the trial court's denial of his pretrial motion to suppress the marijuana, pursuant to ORS 135.335(3).  The remaining counts against him were dismissed.  *See State v. Dinsmore*, 342 Or 1, 6, 147 P3d 1146 (2006) (ORS 135.335(3) permits defendant to plead guilty to some charges, and to have others dismissed, while retaining the right to appeal adverse rulings on pretrial motions).

1

from inside the residence and that she thought there might be a child inside. The caller stated that she had heard the female resident of the house, Sherry Turnage, use a prearranged code word indicating to the caller that police assistance was needed. That information was, in turn, related to Officer Venables who was dispatched to the residence. Venables believed that the situation amounted to an "extreme emergency," and sped to the location using his patrol car's lights and siren. Officer Wileman was also dispatched to the residence. Like Venables, Wileman believed that the situation constituted an emergency because, as a child, his own family had frequently used code words to indicate "something important."

When the officers arrived at the residence, they saw two individuals sitting on the front porch of the house; both seemed nervous, but not afraid or startled. When asked, they confirmed that a dispute was ongoing inside the residence and that that was why they were outside. Both Venables and Wileman could hear yelling coming from inside the house; they could not, however, understand what was being said. The front door to the residence was locked, and the two people on the front porch informed Venables that he could gain access through the back door. Venables did not knock on the front door or otherwise make contact with the people inside, for fear of escalating the situation.

Walking toward the back of the property, Venables stopped at a window on the side of the house, and observed defendant and Turnage arguing; Venables could not determine what was being said, nor did he observe any indication of a physical altercation between the occupants. On reaching the back of the house, Venables

continued to observe its occupants through another window next to the back door. Turnage saw Venables and yelled "cops," at which point defendant began to pick buds off a marijuana plant in the room. At the same time, Venables opened the back door and identified himself and Wileman. Venables then began investigating whether an assault had taken place.

Venables interviewed Turnage, and Wileman interviewed defendant. Both Turnage and defendant were free of marks and bruises and, after his preliminary inquiry, Venables determined that no assault had occurred. Venables then turned his attention to the marijuana plant and, while searching other parts of the residence, discovering several more plants in the house.

Before trial, defendant moved to suppress the marijuana seized after the officers entered his residence, arguing that the warrantless entry onto the rear of his property along the side of his house violated Article I, section 9, of the Oregon Constitution. Specifically, defendant argued that the officers' continuation past the initial approach to the front of his house without a warrant, was unlawful because it was not otherwise authorized under an emergency aid exception to the warrant requirement.[2] The trial court rejected defendant's motion, concluding that the officers were authorized under

_____

[2] Defendant did not contest the officers' physical entry into his house, once they reached the back door. Presumably, defendant limited his argument in that fashion because, once the officers saw defendant through the rear window of the house removing buds from the marijuana plant, they were authorized to enter the residence under an exception to the warrant requirement for preventing the destruction of evidence.

3

the emergency aid exception to proceed around the side of defendant's residence and, therefore, did not violate Article I, section 9, of the Oregon Constitution when they entered the residence.

On appeal, defendant again argued that the police had violated defendant's rights under Article I, section 9, when they entered onto his property without a warrant, because the evidence did not support an objective reasonable belief that an emergency existed at that time. In response, the state argued that use of the code word and the neighbor's report of hearing yelling from inside the residence, in addition to the yelling heard by the police officers at the location, permitted the officers to proceed beyond the front of the house and enter defendant's house under the emergency aid exception to the warrant requirement. The Court of Appeals disagreed with the state, citing the four-part test that it had announced in *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992). [3] In

---

[3]    In *State v. Follett*, 115 Or App 672, 680, 840 P2d 1298 (1992), the Court of Appeals held that

"the Emergency Aid Doctrine provides an exception to the warrant requirement of Article I, section 9, when these conditions are met:

"(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2) The emergency must be a true emergency -- the officer's good faith belief alone is insufficient.

"(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4) The officer must reasonably suspect that the area or place to be

4

doing so, the Court of Appeals noted that

> "if objective indicia of a life-threatening emergency were present up to the point that the officers reached the back door of the house, then their entry into the house and seizure of the marijuana plants conceivably could have been justified under the plain view and exigent circumstances doctrines."

*Baker*, 237 Or App at 347. The Court of Appeals nevertheless concluded that

> "[w]hen the officers saw through the side window that the couple was engaged in only a verbal, nonviolent argument unaccompanied by other evidence indicative of life-threatening violence, it ceased to be objectively reasonable for the officers to believe that immediate intervention by them to protect life was necessary."

*Id.* at 349. As a result, the Court of Appeals reversed the trial court's order denying defendant's motion to suppress the marijuana and we allowed the state's subsequent petition for review.

As a threshold matter, we observe that the Court of Appeals decided this case on a legal theory that was different from the one that defendant pursued at trial and on appeal. In those forums, defendant argued that the evidence was not sufficient under an emergency aid exception to permit the police to proceed around the side of the house without a warrant. The Court of Appeals, however, focused its analysis on whether an emergency continued to exist after the officers had looked through the house's side

---

searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency."

(Footnote omitted.)

5

window and observed only a verbal argument between the residents. *Id.* at 347. For purposes of this opinion, we confine our review to the issue as defendant raised it below.

On review, the state contends that, as applied to this case, the four-part test, established by the Court of Appeals in *Follett*, is too narrow, because it can be triggered only when police officers have an objectively reasonable belief that their assistance is needed for the protection of *life*, or that *life-threatening* injury is imminent. Instead, the state argues that an emergency aid exception to the warrant requirement should authorize the police to enter a residence based on a reasonable belief that entry is necessary to assist persons who have suffered, or are threatened with, serious physical injury or harm. For his part, defendant agrees that the threat of "serious physical injury," and not the risk of life-threatening injury, is all that should be required under an emergency aid exception. Nevertheless, defendant argues that the Court of Appeals correctly determined that here, the officers did not have a reasonable belief that Turnage was in imminent danger of serious physical injury or harm.

We begin with Article I, section 9, of the Oregon Constitution, which provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Under Article I, section 9, warrantless entries and searches of premises are *per se* unreasonable unless falling within one of the few "specifically established and well-delineated exceptions" to the warrant requirement. *State v. Davis*, 295 Or 227, 237, 666

6

P2d 802 (1983) (citing *Katz v. United States*, 389 US 347, 357, 88 S Ct 507, 514, 19 L Ed 2d 576 (1967)). The state has the burden of proving that circumstances existing at the time were sufficient to satisfy any exception to the warrant requirement. *Id.* at 237. Here, the state argues that the officers' eventual warrantless entry into defendant's residence was justified under an emergency aid exception to the Article I, section 9 warrant requirement.

For purposes of Oregon law, this court has acknowledged the existence of a so-called emergency aid exception in only two cases: *State v. Davis* and *State v. Bridewell*, 306 Or 231, 236, 759 P2d 1054 (1988).[4] In *Davis*, a man had told police that his girlfriend might be being raped in a motel room by a man he had seen carrying an automatic pistol. When the police knocked on the room, the woman opened the door and walked out without appearing frightened or disheveled. The police then entered the room of the defendant -- a convicted felon -- and found a gun and drugs. Later, defendant moved to suppress that evidence, relying on the Fourth Amendment and Article 1, section 9. This court noted that the circumstances that had originally led the police to the room arguably fell within the scope of the emergency aid exception. *Davis,* 295 Or at 239-40. Without adopting or further describing the exception, however, this

---

[4]     Other state supreme courts have also recognized emergency aid as an appropriate exception to the constitutional warrant requirement under their own search and seizure provisions. *See, e.g*., *State v. Schultz*, 170 Wash 2d 746, 248 P3d 484, 488 (Wash 2011) (emergency aid as exception to the warrant requirement of Article 1, section 7, of the Washington Constitution); and *State v. Ford*, 188 Vt 17, 998 A2d 684, 688-89 (Vt 010) (exception to Article 11 of the Vermont Constitution).

7

court concluded that the state could not rely on the exception once the woman had walked out of the room, because the emergency had dissipated. *Id*. Accordingly, the court held that, "[a]bsent articulable facts that evidence a compelling and urgent need for entry, the Oregon Constitution demands a warrant be issued." *Id*. at 243.

Later, in *Bridewell*, this court acknowledged that *Davis* had implicitly adopted the emergency aid exception, stating:

"Apart from the emergency/exigent circumstances exception to the warrant requirement, this court tacitly has embraced the emergency aid doctrine in a criminal context. *See State v. Davis, supra*. The emergency aid doctrine is distinct from the emergency/exigent circumstances exception to the warrant requirement because the former does not require probable cause to believe that a crime has been committed. In *Davis*, the trial court concluded that the police did not have probable cause to enter when investigating a disturbance in a motel room. In reviewing that case, we observed the recognition of the emergency aid doctrine in both federal and state courts. We also observed that 'this court has not had occasion to apply' the emergency aid doctrine. *State v. Davis, supra*, 295 Or at 238. After concluding that the circumstances in *Davis* arguably fell within the scope of the emergency aid doctrine, we held that any 'emergency' previously existing had dissipated when the purported victim left the motel room.

"However, even where courts may accept a reasonable belief or suspicion, as opposed to probable cause, as a basis to apply the emergency aid doctrine to law enforcement activities, this means a true emergency. As noted above, the facts of this case do not meet that threshold requirement."

306 Or at 236-37.

This court has recognized exceptions to the Article I, section 9, warrant requirement to protect the safety of officers or others. *See*, *State ex rel Juv. Dept. v. M. A. D.*, 348 Or 387, 233 P3d 437 (2010) (permitting school official to search based on specific and articulable facts demonstrating immediate threats of harm to students and

8

staff); *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (permitting limited detention based on specific and articulable facts demonstrating imminent threat of serious personal injury to officers or others present). A similar kind of societal interest -- the need to immediately render aid to a person or to prevent the immediate threat of serious personal injury or harm -- is present here. We thus agree that, under certain circumstances, the need to render emergency aid or prevent serious injury or harm is an appropriate justification for an immediate warrantless entry under Article I, section 9. Consequently, we conclude that an emergency aid exception to the Article I, section 9 warrant requirement is justified when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons,[5] or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm.[6]

---

[5] In our view, it does not matter whether the need to render immediate aid is triggered by a human source or a condition idiopathic to the person needing aid.

[6] The elements of an emergency aid exception to the Fourth Amendment warrant requirement were first set out by the United States Supreme Court in *Mincey v. Arizona*, 437 US 385, 392-93, 98 S Ct 2408, 57 L Ed 2d 290 (1978). In *Mincey*, the Court described in broad terms the contours of an emergency aid exception to the warrant requirement:

"We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. * * * 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' And the police may seize any evidence that is in

9

Having set out the elements of an emergency aid exception to Article I, section 9, we next determine whether those elements were satisfied here. This court reviews decisions on motions to suppress evidence for errors of law, and is bound by the trial court's findings of fact if they are supported by the record. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). As described above, the Court of Appeals concluded that, once Officer Venables observed through the side window that defendant and Turnage were simply engaged in a nonviolent verbal argument, the officers ceased to have an objectively reasonable belief that their entry into defendant's house was necessary to prevent serious injury.

However, as we have noted, the issue that defendant framed before the trial court was not whether an emergency continued to exist after Officer Venables made the observation through the side window, nor whether police were authorized to enter the house once they reached the back of the house. Rather, defendant's argument was that, without a warrant, the police officers lacked authority to go onto his property beyond the initial approach to the front of the house and that, by doing so, they unlawfully invaded the "curtilage" of his residence.[7] As a result, defendant contended below that the

plain view during the course of their legitimate emergency activities."

(Citations and footnotes omitted.) In a more recent case, the Supreme Court stated that the reasonableness of an officer's belief that emergency aid is necessary must be viewed under an objective standard. *See Brigham City, Utah v. Stuart*, 547 US 398, 403-04, 126 S Ct 1943, 164 L Ed 2d 650 (2006) (setting objective reasonableness as the standard).

[7] Article I, section 9, protects the privacy interest in land within the curtilage

10

observations made through the windows and the evidence seized after the "trespass" beyond the front approach should have been suppressed. Consequently, we will consider only whether the officers had, at the time they proceeded beyond the front of the house, an objectively reasonable belief, based on articulable facts, that it was necessary to do so to assist persons suffering from, or imminently threatened with, serious physical injury or harm.

Here, Venables and Wileman had received information that yelling and screaming were coming from defendant's house, that a child might be inside the residence, and that a code word indicating a need for police intervention had been given. Based on those facts, Venables believed that an emergency existed and, using his vehicle's lights and siren, sped to the location. Wileman also had concluded that an emergency existed. When the officers arrived at defendant's house, they could hear arguing and yelling from within it. Those facts supported an objectively reasonable belief that an emergency existed, based on the common-sense understanding that a person does not go through the trouble of creating a code word indicating that police assistance is required, and coordinating with another person to recognize that code word, unless there is a genuine concern that circumstances can exist that will prevent the person seeking help from receiving it. There are facts in this record that support the officers'

of a dwelling. Curtilage is "'the land immediately surrounding and associated with the home.'" *State v. Dixon/Digby*, 307 Or 195, 209, 766 P2d 1015 (1988) (quoting *Oliver v. United States*, 466 US 170, 180, 104 S Ct 1735, 80 L3d 2d 214 (1984)).

11

objective reasonable belief that, at the time they proceeded past the front boundaries of the house, an emergency existed in which there was a threat of serious physical injury or harm to a person or persons inside the house.  Accordingly, the officers were authorized under the emergency aid exception to enter the property at the side and rear of defendant's house without a warrant.  Their subsequent observations through the windows of the house, warrantless entry into the home, and the seizure of evidence therein did not violate Article I, section 9.

The decision of the Court of Appeals is reversed.  The judgment of the circuit court is affirmed.