Submitted December 21, 2011, conviction for resisting arrest reversed and remanded; otherwise affirmed July 5, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

YEN LIN WAN,
aka Y. L. Wan,
*Defendant-Appellant.*

Multnomah County Circuit Court
090749043; A143997

281 P3d 662

Peter Gartlan, Chief Defender, Office of Public Defense Services, and David O. Ferry, Deputy Public Defender, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Defendant appeals from a judgment of conviction for interference with a police officer, ORS 162.247, and resisting arrest, ORS 162.315. The convictions arose from defendant's refusal to allow police officers to enter his home when they responded to a domestic disturbance call. Defendant contends that the trial court erroneously denied his motion to suppress evidence that the officers obtained when they entered his home without a warrant after they heard defendant's girlfriend crying and saw her lying in the fetal position with her back towards them. Defendant also argues that the trial court erred in refusing to give a set of jury instructions concerning the right to self-defense during an arrest involving unlawful force. Because the trial court erred in refusing to give a number of defendant's requested jury instructions, we reverse and remand defendant's conviction for resisting arrest and otherwise affirm.

Unless stated otherwise, the following facts are not in dispute. On May 28, 2009, defendant moved from Taiwan to Portland to live with his girlfriend and study English at Portland State University. About two months later, in the middle of the night, defendant and his girlfriend had an argument about their relationship. Defendant's girlfriend began to cry loudly for several hours. The building security called police, and Officer Tobey and Sergeant Steinbronn responded to the call. Building security told the officers about the argument and the subsequent crying, which had been ongoing for approximately four hours. As the officers approached defendant's apartment, they heard a woman crying. After the officers knocked on the door, defendant partially opened it. The officers could not see defendant's girlfriend at this time, but they could hear her loud crying. They asked defendant whether they could check on her welfare, but defendant refused to let them enter. After repeated requests to enter, defendant opened the door a little wider, and the officers saw the girlfriend lying in a fetal position facing away from them. From his vantage point, Tobey thought she was "either hurt or something else [was] going on with her." Tobey told defendant "in no unspecific terms that we were coming into the apartment to check on the female." Defendant said "no" and asked the

officers to leave. As the officers began to enter, defendant began to push the door closed. Both officers forced the door open and tried to move defendant away from the door and control him so they could check on his girlfriend. As the officers tried to gain control of defendant's arms, defendant twisted and pulled his arms away. Tobey told defendant several times to stop resisting. At one point, Tobey punched defendant in the face when defendant raised his arms and made a fist. In the meantime, defendant's girlfriend stood up and was yelling. Both officers testified that defendant did not hit them. Eventually, Steinbronn pointed his Taser at defendant, ordered him to the ground, and arrested him. The officers checked on defendant's girlfriend, and she was not physically injured.

Defendant was charged with two counts of interference with a police officer and one count of resisting arrest. Before trial, defendant moved to suppress evidence arising from the officers' warrantless entry into his apartment. The trial court denied the motion.

At trial, the state presented the facts above. Defendant testified in his defense, and his account of what occurred in the apartment differed from the officers' testimony. He testified that he was still learning English and did not completely understand all of the officers' questions or commands. Defendant testified that, at first, he denied the officers entry because he believed that the officers had no right to enter without his consent. But when the officers began to push against the door, defendant realized "something might happen," and he attempted to let the officers enter. However, defendant was positioned between the door and a shoe-rack, preventing defendant from opening the door unless he moved out of the way first. But the only way to do that was to close the door a little bit to allow space for him to move out between the door and the shoe rack. When the officers felt the door closing, the officers pushed their way into the apartment.

Even though the officers testified that they ordered him to stop resisting when they were inside the apartment, according to defendant, he did not understand their commands. Instead, he testified, as soon as the officers entered, they were pushing him against the wall and trying

to control him. At that time, he did not think he had done anything wrong, so he did not believe they were trying to arrest him. He testified that the officers dragged him from the wall near the door to an open space in the living room. He testified that one of the officers punched him and another tried to sweep his legs out from under him, causing him to move his arms to protect himself from falling. They also tried to twist his arm in an "arm bar," a painful maneuver where officers apply pressure to a person's shoulder and lock the person's elbow. When Steinbronn pulled out his Taser, defendant understood that he was being arrested and allowed the officers to handcuff him. Defendant's girlfriend also testified that she did not see defendant hit or strike the officers during the struggle.

At the end of trial, defendant requested Uniform Criminal Jury Instruction (UCrJI) 1227, entitled "Self-Defense-Resisting Arrest,"[1] and three special instructions regarding self-defense. The trial court refused to give any of defendant's requested instructions based on its conclusion that there was no evidence that the officers had used unlawful or excessive force during the encounter. Defendant excepted the failure to deliver his requested self-defense instructions. The jury found defendant guilty of all three counts, and the trial court merged the two counts of interference with a police officer into one count.

On appeal, defendant advances five assignments of error. In his first assignment of error, defendant challenges the trial court's denial of his motion to suppress evidence obtained from the officers' warrantless entry into his apartment. Defendant combines his argument on his second, third, fourth, and fifth assignments of error concerning the trial court's refusal to deliver his four requested jury instructions. He argues that he was entitled to a self-defense instruction because he testified that the officers' use of force was excessive, and he resisted arrest to protect himself from harm.

In response to plaintiff's first assignment of error, the state contends that, under the emergency aid doctrine, the police officers properly entered defendant's apartment

---

[1] When referring to UCrJI 1227, we refer to the version available at the time of trial in October 2009.

without a warrant to render aid to defendant's girlfriend, who they perceived was injured. As to defendant's combined argument regarding his requested jury instructions, the state asserts that the trial court's refusal to give the instructions was proper because they provided incorrect statements of law or else would have been confusing to the jury. We address each assignment of error in turn.

We begin with defendant's assertion that the trial court erred in denying his motion to suppress. We review a trial court's denial of a motion to suppress evidence for errors of law and are bound by the trial court's findings if they are supported by the record. *State v. Baker*, 350 Or 641, 650, 260 P3d 476 (2011).

Defendant contends that any evidence obtained after the officers forced their way into his apartment should be suppressed because the officers' warrantless entry was unlawful under Article I, section 9, of the Oregon Constitution. Warrantless entries and searches of premises are *per se* unreasonable unless they fall under a specific established exception to the warrant requirement. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (citing *Katz v. United States*, 389 US 347, 357, 88 S Ct 507, 19 L Ed 2d 576 (1967)). The state has the burden to prove that police action falls under a recognized exception to the warrant requirement. *Id.* at 237. Here, the state relies on the emergency aid doctrine.

In *Baker*, the Supreme Court explained the standard under the emergency aid doctrine to determine whether officers can enter a person's home without a warrant:

> "[W]e conclude that an emergency aid exception to the Article I, section 9 warrant requirement is justified when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm."

350 Or at 649 (footnotes omitted). Under *Baker*, the court must determine whether there are specific and articulable facts to support the officers' belief that a person required aid or assistance and whether that belief was reasonable.

Here, there were articulable facts to justify a warrantless entry. The officers knew that a woman had been crying in an apartment for four hours after an argument. The officers could hear loud crying as they approached defendant's apartment and confirmed that the crying came from defendant's apartment when defendant opened his door. When defendant opened the door a little wider, the officers saw a woman lying in the fetal position crying. At that point, the officers had an objectively reasonable belief that a warrantless entry was necessary to assist a person who was seriously injured. Thus, the trial court appropriately denied defendant's motion to suppress.[2]

We turn to defendant's second, third, fourth, and fifth assignments of error concerning defendant's requested jury instructions on self-defense. We note that defendant requested a self-defense instruction only in relation to the charge of resisting arrest and not the charge of interfering with a police officer. We review the trial court's refusal to deliver a requested instruction for legal error. *State v. Branch*, 208 Or App 286, 288, 144 P3d 1010 (2006). When discussing defendant's requested jury instructions, we view the facts in the light most favorable to defendant. *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009).

Defendant argues that he was entitled to a self-defense jury instruction based on his testimony. A party is entitled to have the jury instructed on the law that supports that party's theory of the case when (1) there is evidence to support that theory and (2) the requested instruction is a correct statement of the law. *Branch*, 208 Or App at 288.

We first discuss whether there was evidence to support defendant's self-defense theory. Self-defense is a justification defense against prosecution for any offense. ORS 161.190. "[A] person is justified in using physical force

---

[2] The trial court also agreed with the state's argument that the community caretaking statute, ORS 133.033, provided a basis for the officers to enter the residence without a warrant, and defendant does not challenge that portion of the trial court's ruling on appeal. We reach the constitutional issue because a warrantless entry in compliance with ORS 133.033 is not necessarily a permissible one under the Oregon Constitution. *See, e.g., State v. Salisbury*, 223 Or App 516, 523, 196 P3d 1017 (2008) ("Thus, even if the state is able to satisfy the requirements of ORS 133.033, it must also satisfy the requirements of the emergency aid doctrine.").

upon another person for self-defense * * * from what the person reasonably believes to be the use or imminent use of unlawful physical force[.]" ORS 161.209. However, if a person is being arrested, that person "may not use physical force to resist an arrest by a peace officer * * *, whether the arrest is lawful or unlawful." ORS 161.260. Read together, the statutes present an apparent contradiction: a person may not use force to resist arrest, even an unlawful arrest, but that person is entitled to use force in self-defense when he reasonably believes that another person, including a police officer, is using unlawful force against him. In *Oliphant*, the Supreme Court resolved that apparent contradiction by highlighting the requirement for an arrestee's *reasonable belief* that the arresting officer's force is greater than necessary to achieve arrest:

> "If [the defendant] believed, and a reasonable person in his position would have believed, that the use or imminent use of force against him exceeded the force reasonably necessary to effect the arrest, then he was entitled to defend himself from that use of force. Moreover, * * * the burden of proof was on the state to disprove the existence of that defense beyond a reasonable doubt."

347 Or at 194. Thus, defendant is entitled to a self-defense jury instruction if there was evidence that he reasonably believed that the officers arresting him were using more physical force than was reasonably necessary to arrest him.

Viewing the evidence in the light most favorable to defendant, there was evidence that he reasonably believed the officers were using unnecessary force to effect an arrest. The officers testified that they told defendant that they were arresting him and to stop resisting arrest. However, there was evidence that defendant did not understand those commands. Defendant had just moved to the United States two months before the incident and was still learning English. He testified that he tried to comply with the officers' order to let them enter but was blocked due to his position next to the shoe rack. He had to close the door to move out of the way to allow them to enter. When he tried to let the officers enter by closing the door, he was met with force. The officers pushed their way into his apartment and shoved defendant against the wall. The officers tried to grab defendant's arms,

and Tobey punched defendant in the face. When the officers did get a hold on defendant's arms, they performed an "arm bar," applying pressure to his shoulder and twisting his arms. Then one of the officers tried to sweep defendant's legs out from under him, forcing defendant to use his arms to brace himself for a fall. In defendant's view, he was trying to comply with the order to open the door and was immediately met with force by the police. He did not know the officers were trying to arrest him. Based on defendant's circumstances—his limited understanding of English, the limited space at the doorway, and his belief that, although he was complying with the officers' order to let them in, they attacked him—a reasonable juror could find that defendant reasonably believed that he could defend himself from unlawful force by the officers. Accordingly, there was evidence to support defendant's self-defense theory.

We now turn to whether defendant's requested instructions were correct statements of the law. Defendant's second assignment of error concerns UCrJI 1227, which has been amended since trial. Because of that amendment and because defendant's fourth and fifth assignments of error concerning his other requested instructions are dispositive, we need not address his second assignment of error.

In defendant's third, fourth, and fifth assignments of error, he assigns error, respectively, to the trial court's refusal to give defendant's requested jury instructions five, six, and seven. The instructions were designed to work together as a group. Instruction six describes when an arrestee may use physical force in self-defense and explains that the state has the burden of proof to disprove the existence of the defense. Instruction five expands on that instruction by stating that the amount of physical force used in self-defense must be reasonable. Finally, instruction seven explains how to assess the reasonableness of a defendant's belief that force is being applied or about to be applied to him. Because instruction #6 provides the general description of the law on self-defense during an arrest, we begin with that instruction.

Special jury instruction six cited *Oliphant* and provided:

"The Defense has raised the defense of self-defense to the charge of resisting arrest.

"If [defendant] believed, and a reasonable person in [defendant's] position would have believed, that the use or imminent use of force against him exceeded the force reasonably necessary to effect the arrest, then he was entitled to defend himself from that force.

"The burden of proof is on the state to disprove the existence of self-defense beyond a reasonable doubt."

That instruction is practically identical to the Supreme Court's holding in *Oliphant*:

"If [defendant] believed, and a reasonable person in his position would have believed, that the use or imminent use of force against him exceeded the force reasonably necessary to effect the arrest, then he was entitled to defend himself from that use of force. Moreover, * * * the burden of proof was on the state to disprove the existence of that defense beyond a reasonable doubt."

347 Or at 194. Comparing the requested instruction to the holding in *Oliphant*, we conclude that it is a correct statement of the law. The instruction correctly instructs the jury to focus on defendant's reasonable belief that the force applied or about to be applied to him during the arrest exceeded the force reasonably needed to make the arrest.

Nonetheless, the state contends that the instruction alone is incomplete because it fails to instruct the jury that, under the self-defense statute, a "person may use a degree of force which the person reasonably believes to be necessary for the purpose [of self-defense]." ORS 161.209. A trial court does not err in refusing to give a jury instruction that is incomplete. *State v. Wilhelm*, 55 Or App 168, 171, 637 P2d 1294 (1981). A self-defense instruction must (1) inform the jury that the defendant has raised a self-defense claim, (2) give the jury the appropriate standard for analyzing the self-defense claim, and (3) inform the jury that the burden of proof is on the state to prove beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Dahrens*, 192 Or App 283, 287, 84 P3d 1122 (2004).

Defendant's requested instruction six (1) informed the jury that defendant raised a self-defense claim in the first and second paragraphs, (2) included the standard for the jury to determine whether defendant reasonably believed he was entitled to defend himself in the second paragraph, and (3) stated that the state bears the burden to disprove the defense in the third paragraph. To the extent that the state asserts that, because defendant's requested instruction five was an incorrect and confusing statement of the law,[3] instruction six had to state that the degree of force used by defendant must have been reasonable as provided in ORS 161.209, we disagree with the state given the factual circumstances of this case.

In this case, the degree of force defendant used was not at issue. This was not a case where the prosecution contended that, if defendant had been entitled to defend himself, he had used unreasonable force in self-defense. And, this case did not appear to present a question of fact for the jury to determine whether defendant's degree of force was reasonable. Defendant did not strike, punch, hit, kick, or otherwise injure the officers, nor did defendant wrap his arms around or otherwise immobilize the officers, as the testimony of both the officers and defendant's girlfriend confirmed. The only evidence of force was the officers' testimony that defendant pushed, pulled, and twisted his

---

[3] Through his requested instruction five, defendant attempted to address the requirement that the degree of force that the arrestee uses in self-defense must be reasonable:

"Any person has the right to resist arrest, even if the arrest is lawful, if that arrest is made with excessive force, however the arrestee's use of physical force in self-defense must be reasonable under the circumstances."

We agree with the state that the phrase "[a]ny person has the right to resist arrest" introduced an incorrect statement of the law. In *Oliphant*, the Supreme Court emphasized the distinction between using physical force to resist arrest, which is unlawful, and an arrestee's use of physical force in self-defense against unlawful force employed by the arresting officer, which is lawful under some circumstances. 347 Or at 193; *see also State v. Wright*, 310 Or 430, 434-35, 799 P2d 642 (1990). We also agree with the state's additional argument that the term "excessive force," as opposed to "unlawful force," introduces a potentially confusing and undefined term and is incorrect given *Oliphant. See Oliphant*, 347 Or at 197 (it was inappropriate to give an instruction that required the jury to determine whether the officer's use of the force was "excessive," a term not mentioned in the self-defense statute). Thus, the trial court in this case properly refused to give defendant's requested instruction five.

arms when the officers tried to grab his hands.[4] Other than defendant's attempts at releasing his arms from the officers' hold, defendant did not use any other force during the struggle. Based on that evidence, there was no call for the jury to consider whether the degree of defendant's use of force was reasonable. Under that narrow set of circumstances, we cannot say that defendant's requested instruction was incomplete, and we conclude that the trial court erred in refusing to give defendant's requested instruction six. Accordingly, we reverse and remand defendant's conviction for resisting arrest.

We also briefly address whether the trial court erred in refusing to give defendant's requested jury instruction seven. That instruction addressed the basis for defendant's assertion of a right to self-defense. Instruction seven stated:

"With respect to the Defendant's defense of self-defense, you should consider whether [defendant]'s belief was reasonable from the standpoint of a reasonable person in the plight of the defendant[ ] at the time, under all the conditions surrounding him, as disclosed by the testimony."

The state's sole argument regarding that instruction is that, because instruction six regarding self-defense was properly not given, there was no need for instruction seven. That argument is unavailing in light of our holding that the trial court erred in refusing to give instruction six. Accordingly, the trial court erred in refusing to give defendant's requested instruction seven. *See State v. Holbrook*, 98 Or 43, 70, 188 P 947 (1920) ("The law [respecting the right to use force in self-defense] is that the matter must be considered from the standpoint of a reasonable man in the plight of the defendants at the time, under all the conditions then surrounding them, as disclosed by the testimony."); *see also Oliphant*, 347 Or at 191 (citing *Holbrook* with approval).

In conclusion, the trial court did not err in denying defendant's motion to suppress, but it erred in declining to give defendant's requested special instructions six and seven, instructions on self-defense during an arrest. We

---

[4] Tobey testified that defendant began to "fight" with the officers, but his description of the fight was defendant pushing and pulling away from the officers' attempt to grab defendant's hands.

decline to review whether it was error to refuse to give UCrJI 1227 because, on remand, defendant is not likely to request the 2009 version of that instruction, which was superseded after the decision in *Oliphant*. Accordingly, we affirm defendant's conviction for interfering with a police officer, but reverse and remand his conviction for resisting arrest.

Conviction for resisting arrest reversed and remanded; otherwise affirmed.