Argued and submitted February 19, conviction for resisting arrest reversed and remanded; otherwise affirmed August 20, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOE ERNEST RAMIREZ,
*Defendant-Appellant.*

Lane County Circuit Court
211119536; A151166

333 P3d 358

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Edmonds, Senior Judge.

DEVORE, J.

**DEVORE, J.**

Defendant's appeal requires that we determine whether he offered evidence to support a jury instruction on self-defense in response to a charge of resisting arrest. At trial, he was convicted on misdemeanor charges of driving under the influence of intoxicants (DUII), ORS 813.010, recklessly endangering another person, ORS 163.195, interfering with a peace officer, ORS 162.247, and resisting arrest, ORS 162.315. On appeal, he assigns error to the trial court's denial of his requested Uniform Criminal Jury Instruction (UCrJI) 1227. We reject, without further discussion, his other assignments of error. "We review a trial court's refusal to give a requested instruction for errors of law in light of the facts that are most favorable to defendant." *State v. Sullivan*, 253 Or App 103, 104, 288 P3d 1004 (2012), *rev den*, 354 Or 814 (2014) (quoting *State v. Greeley*, 220 Or App 19, 21, 184 P3d 1191 (2008)). We reverse and remand his conviction for resisting arrest and otherwise affirm.

A statute and a uniform instruction frame our issue. Under ORS 162.315(1), "A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." Employing those terms, the state charged that defendant "did unlawfully and intentionally resist Guy Pease, a person known to the defendant to be a peace officer, in making an arrest[.]" Defendant gave a pretrial notice of intent to assert self-defense and, at trial, submitted a request for UCrJI 1227. That instruction reads:

"[*Defendant's name*] has raised the defense of self-defense to the charge of resisting arrest.

"If [*defendant's name*] reasonably believed that the officer[s] arresting [him / her] [was / were] using more physical force than was necessary to make the arrest, then [*defendant's name*] was entitled to use physical force in self-defense. In defending, [*defendant's name*] was entitled to use only that degree of physical force that [he / she] reasonably believed to be necessary to defend [himself / herself] against what [he / she] believed to be the excessive force.

"The burden of proof is on the state to prove beyond a reasonable doubt that this defense does not apply."

(Brackets and italics in original.) To be given, the instruction required the trial court, and now requires this court, to determine whether the facts in evidence, construed in the light most favorable to defendant, could show that he believes, and a reasonable person in his position would have believed, that the officer used more force than necessary to effect the arrest. *State v. Oliphant*, 347 Or 175, 194, 218 P3d 1281 (2009).

In light of that standard, we juxtapose defendant's evidence against a backdrop of evidence from the state's witnesses. Defendant suffers from long-term work-related injuries, including damaged rotator cuffs in both of his shoulders and 38 percent hearing loss in both ears. On September 8, 2011, defendant drove to the Lane County Jail to pick up his wife, who had been arrested the previous day. Defendant arrived at the jail with two of his young children. After waiting for some time outside, defendant entered the jail reception area. A deputy working at the reception desk noticed that defendant "was a little loud, wasn't walking too straight, and appeared to be impaired in some way." A sergeant escorted defendant outside because he had begun to cause a disturbance. Deputy Pease was dispatched and told that defendant was potentially an intoxicated driver. Pease met defendant outside the jail. After investigating, Pease placed defendant under arrest for DUII and handcuffed defendant with his hands behind his back. While Pease searched defendant, defendant's wife emerged from the jail. Pease recalled that defendant yelled at his wife and would not get into the patrol car. Defendant recalled that he was shouting in an effort to give his keys and his wallet to his wife so that she could leave with their children. Pease pushed defendant halfway into the car and another deputy pulled him the rest of the way into the back seat. Defendant loudly complained that his nose was broken and that Pease had not seen him drive.

According to defendant, he told the officers, while they were arresting him, that he had badly injured shoulders, and they did not heed his concerns. Defendant's wife testified that defendant "kept repeating, 'Watch my shoulders,' because it was hurting him" and that she had "let [the deputies] know

he does have two torn rotator cuffs. And he can't hear very well." Defendant said he was in pain when they handcuffed him and pushed him into the patrol car. As Pease pushed him, defendant hit his head and scraped his nose.

Pease drove to a secured parking area. After Pease and defendant stepped out of the car, Pease tried to direct defendant to the Intoxilyzer room inside the facility. Rather than walking as directed, defendant stared angrily at Pease. With "push/pull" pressure on defendant's shoulders, Pease turned defendant toward the facility. Defendant pushed back against the force on his shoulder and "kept his body from turning in the direction that [Pease] was trying to get him to walk." Pease told defendant to stop resisting and increased the pressure to defendant's shoulder to get him to move in the proper direction. Pease attempted to push defendant down but later testified, "I had him by the shoulders, I didn't have very good control. So we started spinning around in a clockwise circle, him pushing against me and me trying to push him down. We weren't going anywhere except in a circle." Pease swept defendant's legs out from under him, and defendant fell facedown to the ground. Defendant's head hit the concrete floor causing a "goose egg" to appear on his forehead. He began yelling that Pease had hurt his shoulder and face.

After entering the jail, defendant testified that Pease grabbed him and caused him "excruciating" pain. He stated:

"You grab somebody and you tend—all you do is jerk in a motion. And when [Pease] says we're turning a circular motion, you're going away from the pain. * * * And I think that's what he mistook as interfering or resisting arrest. And that's when he slammed me down, or they did, or whatever, man. It just happened so fast, you know. That's the reason I was so mad.

"* * * * *

"I wasn't trying to get away or nothing. I was just, you know, just a reaction. I never resisted arrest."

Defendant believed that problems related to his hearing were mistaken for threatening and noncompliant behavior.

A video recording was made of the ensuing events. The recording was received into evidence, and it would become critical to defendant's requested instruction. The video recording occurred when a nurse evaluated defendant for injuries and when defendant considered whether to take a breath-test, waited for the equipment to run, and waited for an analysis. On the video, defendant made several statements regarding Pease's use of force:

"Bring that cop in here that kicked my ass ***. I want you to bring him in here with me and videotape it. *** I was trying to be a gentleman about it, man, but he just wanted to kick my ass. So yeah, let's get it on tape.

"* * * * *

"No, man, I don't got no problem. The only problem I've got is you manhandling [indiscernible].

"* * * * *

"I don't think I should go [take a breath test]. 'Cause [Deputy Pease is] trying to bust me, after [expletive] breaking my nose and [expletive] my shoulder up. I think that he's trying to bust me on a [indiscernible] ***.

"* * * * *

"Why does he want to hurt me man? *** He did hurt me and he's not done trying to hurt me.

"* * * * *

"And you got this guy already, bust my nose and break my head and bust me up. *** And everybody seems ok with it, man.

"* * * * *

"I don't know what you said or what you heard, but I think you were just being a little ornery. *** or you wouldn't hit me like you did.

"* * * * *

"Can I ask you something, man, honestly? *** Is it just procedure? Is it just part of the rules, or? *** How come you got to get so rough with the people when [indiscernible] ***. When there's people not resisting, even, you know, you

get rough with them, why? Why do you do it? Is it part of the procedure thing, rules and things?"

At trial, Pease acknowledged many of defendant's statements on the video, although Pease denied hitting defendant.

Defendant followed his pretrial notice with a written request for jury instructions that included UCrJI 1227. As noted, the instruction entitled the defendant to "use physical force in self-defense" if he "reasonably believed that the officer[s] arresting [him] [was] using more physical force than was necessary to make the arrest * * *." If so, then he may "use only that degree of physical force that [he] reasonably believed to be necessary to defend [himself] against what [he] believed to be the excessive force."

The state objected to the instruction, arguing that there was no evidence to support it because defendant had not testified at trial that more force than necessary was used for the arrest or that he believed he needed to defend himself against excessive force. Deeming the evidence legally insufficient to require the giving of the instruction on self-defense, the court denied the request for the jury instruction. On the following day of trial, defense counsel raised the issue again and argued,

> "We had discussed the self-defense relating to the charge of resisting arrest. And as I stated [yesterday], there was no testimony elicited about [defendant's] subjective belief about the reasonableness of the police action. However, on the video, it shows [defendant] stating that he believes he had been manhandled by Deputy Pease and suggesting that Deputy Pease had handled him roughly. And I believe that is sufficient evidence to raise the self-defense of the resisting arrest instruction."

The trial court adhered to its prior ruling.

On appeal, defendant urges that the trial court erred in denying the request for the jury instruction, contending that the video recording provided sufficient evidence of defendant's subjective belief so as to warrant the requested jury instruction. The state responds that the trial court did not err because "[d]efendant failed to identify to the trial court any statement made in the recording that

established he believed Pease's level of force was not reasonably necessary."[1] Alternatively, the state contends that defendant's belief was not "objectively reasonable." The state asserts that defendant merely established that he had been hurt.

Our review is not to determine the factual disputes of self-defense or resisting arrest. Our concern is only defendant's entitlement to the jury instruction. "Generally speaking, a criminal defendant is entitled to a jury instruction if the instruction 'correctly states the law,' the instruction is 'based on [the defendant's] theory of the case[,]' and the record includes evidence supporting that theory."[2] *State v. Cossette*, 256 Or App 675, 680, 301 P3d 954 (2013); *State v. Branch*, 208 Or App 286, 288, 144 P3d 1010 (2006). Where that theory is self-defense and some evidence supports it, the defendant is entitled to a jury instruction that explains that

> "[i]f [the defendant] believed, and a reasonable person in his position would have believed, that the use or imminent use of force against him exceeded the force reasonably necessary to effect the arrest, then he was entitled to defend himself from that use of force."

*Oliphant*, 347 Or at 194.

A recent case offers some parallel for our case here. In *State v. Wan*, 251 Or App 74, 85, 281 P3d 662 (2012), we considered whether the trial court erred in declining to give defendant's requested jury instructions on self-defense to the charge of resisting arrest. The defendant had prevented officers from entering his apartment to check on his girlfriend's welfare. The building security had reported loud crying that had endured for hours. *Id.* at 76-77. The officers attempted to gain control of the defendant, but the defendant twisted and

---

[1] On appeal, the state's argument is not limited to a criticism of defendant's testimony at trial. The state recognizes that our review for support for the jury instruction must consider all the evidence offered at trial, including exhibits such as defendant's statement in the video recording. *See Crismon v. Parks*, 238 Or App 312, 314, 241 P3d 1200 (2010) (our review includes "any competent evidence").

[2] The state does not dispute whether the uniform jury instruction correctly states the law or whether the instruction is consistent with defendant's theory of the case.

pulled his arm away. One of the officers punched the defendant in the face when the defendant raised his arms and made a fist. An officer attempted to sweep the defendant's legs out from under him and attempted to put the defendant in an "arm bar." *Id.* at 77-78. At trial, the defendant presented evidence that he had recently come from Taiwan and could not understand all of the officers' commands. He could not open the apartment door without moving out of the way due to the position of a shoe-rack, and he believed that he had been attacked even though he had attempted to comply with the order to let the officers in. *Id.* He testified that the officers' use of physical force resulted in movement of his arms "to protect himself from falling." *Id.* at 78. The evidence—his difficulty with English, the limited space around the apartment door, and his belief that he was attacked despite complying with the officers' order—was sufficient to support a jury instruction on self-defense.

Similarly, in this case, there is some evidence, viewed in the light most favorable to defendant, that defendant reasonably believed the officers were using unnecessary force to effect the arrest. From the outset, defendant and his wife told Pease that defendant had painfully injured shoulders. Despite being advised about defendant's torn rotator cuffs, Pease subjected defendant to pain, which defendant described as "excruciating," and caused defendant to scrape his nose on the patrol car. Such testimony supports defendant's contention that he perceived that Pease ignored his injuries and wanted to "hurt" him. Defendant's statements on the video show that defendant believed that Pease's increased pressure on defendant's shoulders, while in the booking area, was unnecessary to effect the arrest under the circumstances. Defendant questioned, "Why does he want to hurt me man? * * * He did hurt me and he's not done trying to hurt me." The videotape revealed that defendant believed that he tried to be compliant, but had been subject to painful and unnecessarily forceful police conduct anyway. Given the prior injuries and all the circumstances, a reasonable juror could find objectively and from defendant's subjective perspective, that the officer used more force than what was necessary to accomplish the arrest. Accordingly, there was some evidence to support defendant's self-defense

theory. The trial court erred in denying defendant's request for a jury instruction on self-defense.

Conviction for resisting arrest reversed and remanded; otherwise affirmed.