Argued and submitted January 29, convictions for fourth-degree assault and first-degree criminal mistreatment reversed and remanded; otherwise affirmed August 26, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SCOTT MICHAEL STRYE,
*Defendant-Appellant.*

Lane County Circuit Court
201210945; A154702

356 P3d 1165

George W. Kelly argued the cause and filed the brief for appellant.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

FLYNN, J.

## FLYNN, J.

Defendant appeals from a judgment of conviction for assault in the fourth degree, ORS 163.160(1)(a), and criminal mistreatment in the first degree, ORS 163.205(1)(b).[1] Defendant's first assignment of error challenges the trial court's refusal to allow defendant "the right to have the jury consider his claim of self-defense," which includes the refusal to instruct the jury on self-defense. We conclude that the trial court erred, and we accordingly reverse and remand.[2]

Defendant's convictions arise out of an incident involving S, a resident at a care facility where defendant worked as a member of the "direct care staff." On December 30, 2011, defendant accompanied S on an outing from the home. Shortly after their return to the home, S—who suffered from autism and other conditions—became "very upset." Coworkers who came to assist defendant described S as angry and "combative." As part of S's "behavior plan," one "calming mechanism" was to get her into the shower. Defendant attempted to do so. The coworkers testified that, during the course of a struggle to get S into the shower, defendant "punched" S in the head.

Prior to trial, defendant gave the state notice of intent to assert the defense of self-defense. *See* ORS 161.055(3) (providing that the defense of self-defense is raised by the defendant either by "notice in writing to the state before commencement of trial" or by "affirmative evidence by a defense witness in the defendant's case in chief"). The state filed a motion *in limine* to prevent defendant from presenting evidence to support a claim of self-defense, including evidence of S's alleged prior violent behavior. The state also

---

[1] Defendant was acquitted of harassment, ORS 166.065(1)(a)(A).

[2] We decline to address defendant's second assignment of error, which challenges the trial court's exclusion of evidence of the victim's history of self-harm and harm to others, because the record may develop differently on remand, particularly given our ruling regarding self-defense. *See State v. Valle,* 255 Or App 805, 806 n 1, 298 P3d 1237 (2013) (declining to address the exclusion of impeachment evidence because "the record may develop differently on remand"). We also decline to address defendant's third assignment of error, which challenges the trial court's quashing of a subpoena for the victim's medical records without conducting an *in camera* review. The trial court primarily based its ruling on procedural grounds that also may not exist on remand.

argued that a defendant "must admit to criminal conduct" before the court can instruct the jury on self-defense.

At the hearing on the state's motion *in limine*, defendant argued that he intended to defend himself against the charged crimes based on alternative theories that (1) defendant did not cause the injuries to S, because she inflicted those injuries upon herself, or (2) any physical force that defendant used upon S was justified as self-defense to avoid what defendant reasonably believed to be S's imminent use of unlawful physical force. The state reiterated its position that defendant could rely on self-defense only if he admitted the elements of the charged crimes, including admitting that he caused S's injuries.

The trial court seemingly agreed with the state, and ruled:

"[Defendant] will proceed according to how you wish to present your case, but I need you to understand that if, at the presentation of this evidence and if I find that the way in which it's unfolding is some sort of complete denial that there was an injury cause[d] and in the context of what I've described I think it's more an issue of whether you're really challenging the state's burden of proof as opposed to the claim of [self-defense], I may end up electing not to give that instruction on self-defense."

During trial, the court refused to let defense counsel ask defendant if he had "known [S] to be * * * dangerous." The court explained that "state of mind is irrelevant" because "[t]he testimony, as I listened very carefully to the defendant, was that, 'I'm not even sure I touched her.' In the context of that characterization, this is not a claim for self-defense." The court also declined defendant's request for the Uniform Criminal Jury Instruction on self-defense. Defendant includes both rulings within his claim that the "court erred in denying defendant the right to have the jury consider his claim of self-defense." We express no opinion about the court's ruling on state-of-mind testimony (about which there appears to have been no offer of proof), but we conclude that, just considering the evidence admitted at trial, defendant was entitled to a jury instruction on his alternative theory of self-defense.

We review a trial court's refusal to give a defendant's requested jury instruction for legal error and "assess the evidence in the light most favorable to the party offering the jury instruction." *State v. Beck*, 269 Or App 304, 309, 344 P3d 140, *rev den*, 357 Or 164 (2015). We describe the testimony in light of that standard. Defendant's coworkers Huskey and Ugalde heard S screaming and went to see if defendant needed help managing her. When Ugalde entered, he saw defendant standing in the doorway to S's bedroom holding the door open with his back, and S was on the floor. Ugalde hopped over S to go to the shower and turn it on. Ugalde then looked back and saw defendant "hunkered over" S. He testified that S "was clawing at him, which that's what she does," and that defendant "punched her" in the head.

When Huskey came through the door into S's bedroom, defendant was hunched over and said, "[S] just grabbed my nuts." Huskey watched defendant try to drag S toward the shower by her bra strap and hair. Huskey testified that S attempted to grab defendant's leg, and defendant "kind of pushed her away and then punched her" on the forehead. According to Huskey, S then got up and went into the bathroom and, once in the bathroom, "smashed the back of her head on the concrete floor[.]"

Defendant testified that, following his return with S from their outing, S went to her bedroom and began screaming a few minutes later. According to defendant, he went to S's bedroom and found her hitting her head against the walls, the closet door, the window; "[p]retty much everywhere." In order to calm her down, defendant urged S, "come on, let's get in the shower." Defendant testified that, after Ugalde came to assist him, he momentarily took his attention off S and then:

> "I felt something on my pants and I looked down and she had both of her hands grabbed onto my pants and she was \* \* \* pulling me towards her. And she had her mouth open with teeth, you know, exposed. I mean, she was coming in to bite."

Defendant described pulling his pants away from S and moving back to "keep her from coming forward and biting me." He also apparently demonstrated a hand motion while

testifying. Defense counsel elicited the following testimony about that motion:

> "[DEFENSE COUNSEL]: You demonstrated a hand. Which hand would go towards her head?

> "[DEFENDANT]: My left hand.

> "[DEFENSE COUNSEL]: All right. Do you know if you * * * touched her head?

> "[DEFENDANT]: I really am not sure. I was moving back away from her. I mean, I could have * * * touched the top of her head, but I'm not sure if I even made contact, to be perfectly honest."

The following day, the site manager for the home observed that S had a cut above her nose and a black eye.

On appeal, defendant renews his argument that he was entitled to have the jury instructed on his alternative theory of self-defense. A defendant is entitled to a jury instruction on self-defense if "(1) there is evidence to support that theory and (2) the requested instruction is a correct statement of the law." *See State v. Wan*, 251 Or App 74, 80, 281 P3d 662 (2012).

ORS 161.209 provides, in pertinent part:

> "[A] person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

Here, it is undisputed that the uniform self-defense instruction that defendant requested is a correct statement of the law. The evidence also supports defendant's alternative theory of self-defense. Defendant's coworkers testified that S was very upset and combative and was clawing or grabbing defendant's leg when he punched her head. Defendant testified that S had grabbed his pants and was pulling him toward her with her mouth open and teeth exposed, appearing to be coming in to bite him. He testified that he moved his hand toward her head in order to perform "a head brace" and "keep her from coming forward and biting" him. In

other words, there is evidence from which a jury could find that defendant's act of extending his hand toward S's head was an act of self-defense.

The state argues, however, that a self-defense instruction was inconsistent with defendant's theory of the case, because defendant "categorically denied intending or causing any of [the victim's] injuries." The state relies on our opinion in *State v. Boyce*, 120 Or App 299, 852 P2d 276 (1993), and on the Supreme Court's opinion in *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981), for the proposition that accidentally causing a victim's injury "is not self-defense." In *Boyce*, the defendant testified that the victim attacked her first, pushing her against the wall and causing a beer glass in the defendant's hand to break. 120 Or App at 301-02. The defendant insisted that she was unaware that the glass had broken and that the victim "collided" with the broken beer glass when she lunged toward the defendant. *Id.* at 302. We held that "[t]o act in self-defense, a person must intentionally or at least knowingly engage in an act to prevent another from imminent use of physical force." *Id.* at 306. Because the defendant's theory was that her role in causing the injury was an "accident," and because "there was no evidence to support the theory of self-defense," we affirmed the trial court's refusal to give the self-defense instruction. *Id.* at 307.

In *Shumway*, the defendant initially shot the victim when the victim approached in a threatening manner and then shot the victim in the head after he had fallen to the floor. 291 Or at 155. He claimed that the second shot—which killed the victim—was an accident. *Id.* The trial court instructed the jury on self-defense to the homicide, but the defendant excepted to the phrasing of one part of the instruction. *Id.* The Supreme Court concluded that any error in the trial court's self-defense instruction was harmless because there was no evidence that the defendant fired the fatal shot in self-defense. *Id.* As the Supreme Court emphasized, "[a]ccording to the state's evidence, the second shot was fired deliberately after any necessity for self-defense had ceased. According to the defendant's evidence, the second shot was not self-defense." *Id.* at 156.

At least two significant factors distinguish this case from *Boyce* and *Shumway.* First, *Boyce* and *Shumway* both emphasize the absence of any evidence—from the defendant or otherwise—that the defendant caused harm through an act of self-defense. Here, as described above, the testimony of defendant as well as his two coworkers permits an inference that defendant extended his hand toward S's head in self-defense. The evidence also permits an inference that defendant's hand made contact with S's head and caused her injuries. Contrary to the state's contention, defendant has not "categorically denied" that his act of self-defense caused injury. Although defendant testified that he is "not sure" if he actually made contact with S when he put his hand out, he also admitted that he "could have * * * touched the top of her head[.]"

Second, unlike the defendants in *Boyce* and *Shumway,* defendant has not claimed that he caused the harm by accident. Although the state is correct that defendant "categorically denied intending to" cause injury to S, neither *Shumway* nor *Boyce* make that dispositive. Rather, both cases emphasize that the defendant claimed the act was unintentional, not just that the resulting injury was unintentional. Unlike *Boyce* and *Shumway,* the evidence in this case permits a jury to find that defendant acted with intent that his action would prevent the victim from biting him.

Moreover, defendant did not lose the ability to present a claim of self-defense when he refused to admit that his act caused injury to S. Neither the statute setting out the defense of self-defense, ORS 161.209, nor the case law requires a defendant to admit the acts in order to have the jury consider whether, if he committed the alleged acts, he did so in self-defense. As we emphasized in *State v. Dahrens,* 192 Or App 283, 286, 84 P3d 1122 (2004), *Boyce* indicates that "the defense of self-defense is available where an act is done with the knowledge or intent that it will thwart another's application of unlawful force" and, thus, that a defendant need not "intend to assault another in order to claim self-defense." *See also State v. Burns,* 15 Or App 552, 556, 516 P2d 748 (1973) ("The fact that defendant claimed accident by testifying that he did not intend to kill [the victim] does not

deprive him of the right to an instruction on self-defense if there is also evidence in the record from which the jury could have inferred that defendant was acting in self-defense.").

Here, there is at least some evidence that defendant knowingly extended his arm to block S's head and some evidence that that action caused her injuries. Even if he did not intend to cause the injuries, he was entitled to have the jury instructed that, if it found defendant committed the charged offenses, then it should also consider whether defendant acted in self-defense. *See Wan*, 251 Or App at 80. The trial court erred in refusing to instruct the jury on that theory, and the error requires us to reverse because "we cannot conclude that the trial court's failure to give defendant's requested instruction did not affect the result." *State v. Zolotoff*, 354 Or 711, 720, 320 P3d 561 (2014) (citing *State v. Davis*, 336 Or 19, 35, 77 P3d 1111 (2003)).

Convictions for fourth-degree assault and first-degree criminal mistreatment reversed and remanded; otherwise affirmed.