Argued and submitted May 30, reversed and remanded September 12, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFERY LORENZO,
*Defendant-Appellant.*

Washington County Circuit Court
C100238CR; A145826

287 P3d 1133

Peter Gartlan, Chief Defender, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Rolf Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for unlawful manufacture of a controlled substance, ORS 475.856, unlawful delivery of a controlled substance, ORS 475.860(2), and felon in possession of a firearm, ORS 166.270. He asserts that the trial court erred in denying his motion to suppress evidence obtained following an officer's warrantless entry into his apartment. On review for errors of law, *State v. Roesler*, 235 Or App 547, 550, 234 P3d 1004 (2010), we conclude that the officer's entry into defendant's apartment was not justified by the emergency aid exception to the warrant requirement and that defendant's consent to the ensuing search was not attenuated from that unlawful entry. Accordingly, because the evidence at issue should therefore have been suppressed, we reverse and remand.

We state the facts consistently with the trial court's express and implied factual findings to the extent that there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Beaverton police were dispatched to an apartment complex at 6:51 a.m. in response to a report by a woman that her ex-fiancé, Kyle, was outside her apartment with a noose around his neck attempting to hang himself. A number of law enforcement and medical personnel responded. The first two officers at the scene placed Kyle in handcuffs and removed the noose from his neck. Several more officers, including Wujcik, arrived shortly thereafter. Wujcik was told that Kyle lived in an apartment upstairs in the same complex, that he owned a firearm, and that he had a roommate named Jeff (defendant).

According to Wujcik, when police are called to "suicidals, * * * sometimes they're suicidal because they have hurt somebody or killed somebody or something else is going on[.]" Knowing that "somebody tried to kill themselves," Wujcik became concerned about defendant's safety, so the officer went upstairs and knocked on the exterior door of defendant's apartment and several times called him by name: "Beaverton Police Department, Jeff[;] are you okay[?]" There was no response from inside the apartment. Another officer then asked Kyle's ex-fiancé to

call defendant. Although she did so twice, defendant did not answer the telephone. Having been informed where defendant's bedroom was located, Wujcik then opened the front door to defendant's apartment and reached in and knocked on defendant's bedroom door, which he could reach without stepping inside the front door into the apartment.[1] As he knocked, Wujcik called out, "Jeff, are you okay?" About 10 seconds later, defendant opened his bedroom door, appearing to have just awakened. Wujcik asked if he was alright, and defendant responded in the affirmative.

Wujcik then asked defendant for permission to come inside and speak to defendant, and defendant agreed and stepped out of the bedroom. Because he smelled a strong odor of marijuana coming from defendant's bedroom, Wujcik asked defendant for his identification. As defendant walked back into his bedroom to retrieve his identification, Wujcik observed a small baggie of what he believed to be marijuana on the floor of the bedroom. After asking him a couple of questions about Kyle, Wujcik informed defendant that he knew there was marijuana in the bedroom and asked defendant if he was selling the drug. Defendant replied that he was not selling marijuana, and Wujcik then asked for defendant's consent to search his bedroom. Defendant consented to the search, and, inside the bedroom, Wujcik found additional marijuana, a spiral notebook apparently containing drug records, digital scales, and a gun. After Wujcik read defendant his *Miranda* rights, defendant made incriminating statements.

Before the trial court, defendant moved to suppress all the evidence obtained as a result of the search of his bedroom. He contended that the officer had conducted an illegal warrantless search when he reached into the apartment and knocked on defendant's bedroom door. The state agreed that the officer had conducted a warrantless search at that point, but argued that the search was justified by the emergency aid exception to the warrant requirement. The state also asserted, in the alternative, that the evidence

---

[1] Although there was disagreement at the suppression hearing regarding whether the front door to the apartment was closed or slightly open, the trial court stated that it would "assume for the sake of argument" that the officer opened the exterior door of the apartment.

in question was not obtained by exploitation of the officer's initial conduct and therefore should not be suppressed. The trial court concluded that the emergency aid exception justified the officer's intrusion into the apartment and, accordingly, it denied the motion to suppress. The court expressly declined to reach the state's alternative argument.

On appeal, the parties reprise their contentions before the trial court. Defendant asserts that the evidence was obtained in violation of his state and federal constitutional rights. In his view, Wujcik conducted an illegal warrantless search, no exception to the warrant requirement applies, and all the evidence in question was obtained as a result of the officer's unlawful conduct. The state, for its part, contends that the officer's intrusion into the apartment was justified by the emergency aid exception to the warrant requirement and that, in any event, officers did not exploit any illegality in obtaining defendant's consent for the search of his bedroom and, therefore, there is no basis to suppress the evidence in question.

Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Pursuant to Article I, section 9, "warrantless entries and searches of premises are *per se* unreasonable unless falling within one of the few 'specifically established and well-delineated exceptions' to the warrant requirement." *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011) (quoting *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983)). It is the state's burden to show that the circumstances at the time of the warrantless entry "were sufficient to satisfy any exception to the warrant requirement." *Id.*

As noted, here the state asserts that the officer's warrantless entry into defendant's apartment was justified by the emergency aid exception to the warrant requirement.

That exception applies "when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm." *Baker*, 350 Or at 649 (footnote omitted). We must decide whether there were "specific and articulable facts to support the officers' belief that a person required aid or assistance and whether that belief was reasonable." *State v. Wan*, 251 Or App 74, 79, 281 P3d 662 (2012).

Prior applications of that standard in *Baker* and *Wan* are illustrative. In *Baker*, officers

"had received information that yelling and screaming were coming from defendant's house, that a child might be inside the residence, and that a code word indicating a need for police intervention had been given. *** When officers arrived at defendant's house, they could hear arguing and yelling from within it."

350 Or at 650-51. The court concluded that, under the circumstances, the

"facts supported an objectively reasonable belief that an emergency existed, based on the common-sense understanding that a person does not go through the trouble of creating a code word indicating that police assistance is required, and coordinating with another person to recognize that code word, unless there is a genuine concern that circumstances can exist that will prevent the person seeking help from receiving it."

*Id.* at 651.

In *Wan*,

"officers knew that a woman had been crying in an apartment for four hours after an argument. The officers could hear loud crying as they approached defendant's apartment and confirmed that the crying came from defendant's apartment when defendant opened his door. When defendant opened the door a little wider, the officers saw a woman lying in the fetal position crying."

251 Or App at 80. In view of those circumstances, we concluded that there were articulable facts to support an "objectively reasonable belief that a warrantless entry was necessary to assist a person who was seriously injured." *Id.* Accordingly, the emergency aid exception to the warrant requirement applied.

Here, by contrast, no articulable facts justified a warrantless entry. Officers were called very early in the morning because a man, Kyle, who owned a firearm and lived with defendant, was outside the apartment of his ex-fiancé with a noose around his neck. After Kyle was put in handcuffs, Wujcik was concerned for defendant's well-being because, in his experience, sometimes suicidal people have hurt someone else. When the officers knocked on the outer door of the apartment and called for defendant, there was no response, and defendant also did not respond to calls to his cell phone. Wujcik had received no specific information indicating that Kyle was suicidal because he had hurt someone, that defendant had been injured, or any other facts that would otherwise suggest that defendant was in some kind of danger. Under the totality of the circumstances presented here, we cannot conclude that there were specific and articulable facts to support an objectively reasonable belief that it was necessary to enter defendant's apartment without a warrant to assist a person who had suffered serious physical injury or harm. Accordingly, we agree with defendant that the emergency aid exception to the warrant requirement does not apply.

The state, nonetheless, asserts that the trial court's decision should be affirmed.[2] According to the state, even if police acted unlawfully in entering the apartment without a warrant, in view of defendant's subsequent consent to allow Wujcik to enter his bedroom, "the evidence at issue merits suppression only if defendant's consent resulted from an 'exploitation' of unlawful police conduct." In the state's view,

---

[2] As noted, the trial court expressly declined to decide whether defendant's consent to the search, which, in turn, yielded the evidence in question was obtained from an "exploitation" of the prior illegality. However, the issue was presented to the court and it is appropriate for us to consider it on appeal. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting forth circumstances in which an appellate court may properly affirm the ruling of a trial court on a basis other than that upon which the trial court relied).

there was no such exploitation and, therefore, the evidence in question should not be suppressed. Defendant, on the other hand, asserts that "the record demonstrates that the incriminating evidence was the product of the illegality, as a matter of law."

"Article I, section 9, may require exclusion of evidence from an otherwise valid consent search upon the ground that the defendant's consent derived from a preceding violation of the defendant's rights under that state constitutional provision." *State v. Hall*, 339 Or 7, 21, 115 P3d 908 (2005). Thus, "[a]fter a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 34-35. The determination of whether the state has met that burden

"requires a fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection between the unlawful police conduct and the defendant's consent. A causal connection requiring suppression may exist because the police sought the defendant's consent solely as the result of knowledge of inculpatory evidence obtained from unlawful police conduct. A causal connection requiring suppression also may exist because the unlawful police conduct, even if not overcoming the defendant's free will, significantly affected the defendant's decision to consent. Although determining the existence of a causal connection requires examination of the specific facts at issue in a particular case, we view several considerations to be relevant to that determination, including (1) the temporal proximity between the unlawful police conduct and the defendant's consent, (2) the existence of any intervening circumstances, and (3) the presence of any circumstance—such as, for example, a police officer informing the defendant of the right to refuse consent— that mitigated the effect of the unlawful police conduct."

*Id.* at 35.

The state first asserts that there is no "minimal factual nexus" between the warrantless entry into defendant's apartment and defendant's subsequent consent

to a search. In the state's view, "even if the officer had not reached inside the apartment door to knock on the door [of the bedroom], events would have unfolded in the same way." We disagree and easily conclude that a minimal factual nexus has been established in this case. As defendant correctly points out, he "had not responded to the prior, legal attempts to contact him" (knocking on the door and calling him on the telephone). The officer was able to contact defendant and seek his consent to the search only by effecting a warrantless entry into his apartment. Those circumstances present a factual nexus between the illegality and defendant's subsequent consent.

The state nonetheless insists that any minimal factual nexus that may exist here does not require suppression because defendant's consent was independent of the illegality or because the link between the consent and the illegality is tenuous. In support of its assertion, the state argues that (1) the intrusion was minimal, (2) when defendant encountered Wujcik, the officer was standing outside the door to the apartment, and (3) by asking if he could come in and talk to defendant, the officer conveyed that "defendant was free to keep the officer from entering." However, considering the totality of the circumstances here, we conclude that the state failed to demonstrate that defendant's consent was independent of, or only tenuously related to, the preceding illegal police conduct.

Here, as discussed, after attempts to contact defendant by other means had failed, the officers opened the front door to defendant's apartment, reached inside, and knocked on defendant's bedroom door while calling out to defendant and asking if he was okay. The events leading up to defendant's consent to the search of his bedroom flowed quickly and directly from the officer's entry into the apartment. Within approximately 10 seconds of the officer's warrantless entry, defendant, apparently having just been awakened from sleep, opened his bedroom door to find the front door of the apartment pushed open and the officer standing immediately outside. At that point, he affirmed that he was all right. The officer immediately asked to enter the apartment and talk and, when defendant acquiesced,

smelled marijuana and right away asked defendant for his identification. When defendant retrieved his identification, the officer observed marijuana in the bedroom and then told defendant that he knew defendant had marijuana, asked defendant if he was selling, and asked for and obtained consent to search. And again, officers had failed in their attempts to contact defendant through lawful means. It was only by means of the unlawful entry into the apartment that the officer was in a position to speak with defendant, ask to enter the apartment, observe the marijuana, and ask for consent to search.

In view of the chain of events here, the fact that the officer's feet remained outside the apartment and that he was entirely outside it when defendant opened the bedroom door does not demonstrate that defendant's consent was independent of or tenuously related to the officer's unlawful conduct. Nor are we convinced that the officer's request to enter the apartment and talk somehow mitigated the prior illegality such that suppression is not required. We note that the officer did not inform defendant that he was free to refuse the officer's entry into the apartment or to refuse to consent to the search; indeed, it was clear from the circumstances that, by the time defendant opened the bedroom door, the officer had previously entered the apartment uninvited. Given the totality of the circumstances, the state did not demonstrate that defendant's consent was independent of the illegality or that the link between the two was so tenuous that suppression should not be required.

Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress and the trial court's judgment must be reversed and the case remanded for further proceedings.

Reversed and remanded.