134 August 28, 2014 No. 59

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JEFFERY LORENZO,
*Respondent on Review.*

(CC C100238CR; CA A145826; SC S060969)

On review from the Court of Appeals.*

Argued and submitted September 17, 2013.

Rolf Moan, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Peter Gartlan, Chief Defender, Salem, argued the cause and filed the brief for respondent on review.

Before Balmer, Chief Justice, Kistler, Walters, Linder, Landau, and Baldwin, Justices.**

BALMER, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

Walters, J., dissented and filed an opinion, in which Baldwin, J., joined.

Baldwin, J., dissented and filed an opinion.

_____

    *  Appeal from Washington County Circuit Court, Steven L. Price, Judge. 252 Or App 263, 287 P3d 1133 (2012).

    ** Brewer, J., did not participate in the consideration or decision of this case.

**BALMER, C. J.**

This is the third of three cases that we decide today in which we consider when evidence obtained during a voluntary consent search must nonetheless be suppressed on the theory that the consent was the product of a prior police illegality. This court previously addressed that question in *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), and today we modified part of the *Hall* exploitation analysis in *State v. Unger*, 356 Or 59, ___ P3d ___ (2014). We disavowed the requirement in *Hall* that a defendant make a threshold showing of a minimal factual nexus between the police illegality and the disputed evidence, and we instead held that, when a defendant challenges the validity of his or her consent based on prior police misconduct, the state bears the burden of demonstrating that the consent was voluntary and was not the product of that misconduct. *Id.* at 74-75. We reaffirmed that the exploitation analysis must be based on the totality of the circumstances. *See Hall*, 339 Or at 35. We modified *Hall*, however, by clarifying the importance of an individual's voluntary consent and by noting that the exploitation analysis should include not only the *Hall* considerations of the temporal proximity between the unlawful conduct and the consent and any intervening or mitigating circumstances, but also the nature of the unlawful conduct, including its purpose and flagrancy. *Unger*, 356 Or at 93.

In this case, defendant challenged the trial court's denial of his motion to suppress evidence obtained during a voluntary consent search, which had followed an officer reaching into defendant's apartment to knock on his bedroom door. The trial court concluded that the officer's entry into defendant's apartment had been lawful and that there was no basis for suppression. Defendant was convicted at a bench trial. The Court of Appeals reversed, holding that the officer's conduct constituted an unlawful search and that the state had not proved that the subsequent consent was independent of or only tenuously related to that prior illegality. *State v. Lorenzo*, 252 Or App 263, 268, 271, 287 P3d 1133 (2012). For the reasons described below, we reverse the decision of the Court of Appeals.

Officers responded to an early morning 9-1-1 call from a woman who reported that her ex-fiancé, Kyle, was outside her apartment with a noose around his neck, threatening to hang himself. When the officers arrived, they quickly detained Kyle and removed the noose from his neck. In the course of talking to Kyle and his ex-fiancée, the officers learned that Kyle lived in an apartment complex directly across from the apartment complex where Kyle had threatened to hang himself, that Kyle owned a gun, and that Kyle had a roommate named Jeff (defendant).

When Officer Wujcik arrived on the scene, after Kyle had been detained, he went to Kyle and defendant's apartment to check on defendant's welfare. Wujcik was concerned about defendant because, as he later explained, "when we get called to suicidals *** sometimes they're suicidal because they have hurt somebody or killed somebody or something else is going on." Initially, Wujcik knocked on the outer door of defendant's apartment and called out, "Beaverton Police Department, Jeff, are you okay?" Defendant did not respond, and other officers on the scene asked Kyle's ex-fiancée to call defendant to see if he was unharmed. Those calls also failed to elicit any response.

As the officers continued to talk to Kyle and his ex-fiancée, they learned that defendant's bedroom door was just inside the exterior door to the apartment. Based on that information, Wujcik reached inside the exterior apartment door and knocked on defendant's bedroom door, which he was able to do without stepping inside the apartment.[1] As he was knocking on the bedroom door, Wujcik again said, "Police, Jeff, are you okay?" About ten seconds later, defendant came out of his bedroom into an area where Wujcik could see him from the front door. At that point, Wujcik was fully outside defendant's apartment. Wujcik again asked defendant if he was okay, and defendant responded, "Yeah." Wujcik then asked defendant, "Can I come in and talk?" and defendant replied, "Yes."

---

[1] Although Wujcik testified that the exterior door to the apartment already was open when he reached inside, Kyle's ex-fiancée testified that defendant's apartment door was closed when officers arrived. In ruling on the motion to suppress, the trial court stated that it would "assume for the sake of argument" that Wujcik had opened the exterior apartment door to reach inside and knock on defendant's bedroom door.

When he entered the apartment, Wujcik smelled a strong odor of marijuana coming from defendant's room, and he asked defendant for his identification. As defendant went back into his bedroom to retrieve his identification, Wujcik saw a plastic bag containing what appeared to be marijuana on the bedroom floor. Wujcik ran defendant's identification and proceeded to question defendant about the incident with his roommate. Wujcik then told defendant that he knew that there was marijuana in his bedroom, and he asked defendant if he was selling the drug. Defendant responded that he was not. Wujcik then asked if he could make sure that defendant was not selling marijuana by searching defendant's room. According to Wujcik's testimony, defendant said "yes" and "motioned towards the door and stepped away." During his search of the bedroom, Wujcik found drugs, drug paraphernalia, and a firearm.

The state charged defendant with unlawful manufacture of marijuana, unlawful delivery of marijuana for consideration, and felon in possession of a firearm. Before trial, defendant moved to suppress the evidence found in his bedroom, arguing that the police had entered defendant's apartment unlawfully, that they had exploited that entry to obtain defendant's consent to search his room, and that defendant's consent had not been voluntary.[2] The trial court denied defendant's motion, concluding that Wujcik's initial warrantless entry into defendant's apartment had been justified under the emergency aid doctrine. Although the trial court found that, in response to Wujcik's request to enter the apartment, defendant had said, "Yes," and that "by

---

[2] In his memorandum in support of the motion to suppress, defendant also argued that he had been stopped unlawfully, although he did not explain at what point the stop had occurred. At the hearing on the motion to suppress, however, defense counsel focused on the officer's unlawful search of the apartment when he had reached in and knocked on defendant's bedroom door. Defense counsel did argue that the officer had stopped defendant unlawfully when he had asked for his identification, but did not argue that defendant had been stopped before that point.

On review, defendant does not renew the argument that the officer had stopped him when he asked to see his identification, but he does argue that the officer had stopped him when the officer reached in and knocked on defendant's bedroom door. At oral argument before this court, however, defense counsel conceded that the stop argument presented on review was not made sufficiently before the trial court. Given that concession, we do not address whether the officer's knock on defendant's bedroom door was an unlawful stop.

consent [Wujcik had gotten] himself into a position where he smell[ed] and [saw] the marijuana," the trial court did not expressly address whether defendant's consent had been voluntary. Moreover, the trial court declined the state's request for an alternative ruling on exploitation. Following his conviction at a bench trial, defendant appealed.

The Court of Appeals reversed. The court first concluded that the emergency aid exception to the warrant requirement did not apply. As a result, the court reasoned that the police had entered defendant's apartment unlawfully. *Lorenzo*, 252 Or App at 268. Applying *Hall*, the court went on to conclude that the evidence from the subsequent search should have been suppressed because "the state did not demonstrate that defendant's consent was independent of the illegality or that the link between the two was so tenuous that suppression should not be required." *Id.* at 271. In particular, the court noted that the officers had been unable to contact defendant through lawful means, "[t]he events leading up to defendant's consent to the search of his bedroom flowed quickly and directly from the officer's entry into the apartment," and the officer had not informed defendant that he could refuse the officer's entry into or search of the apartment. *Id.* at 270-71.

The state petitioned for review. On review, the state does not contest the Court of Appeals' determination that the emergency aid exception did not justify the officer's warrantless entry into defendant's apartment. The state concedes that the officer violated Article I, section 9, when he reached inside defendant's apartment to knock on his bedroom door. Despite that unlawful police conduct, the state argues that the evidence that the officer obtained should not be suppressed because defendant voluntarily consented to the searches that produced the evidence. According to the state, evidence found during a voluntary consent search necessarily is admissible, despite prior police illegality. Even if voluntary consent is not dispositive, however, the state asserts that the evidence in this case should not be suppressed because the police illegality did not significantly affect defendant's decision to consent. In particular, the state notes that the illegal entry into defendant's apartment was short in duration and had terminated by the time that defendant emerged

from his bedroom, the illegal entry did not reveal anything incriminating, defendant was not physically restrained, and the illegal entry was not aggressive or intimidating.

Defendant responds by using this court's decision in *State v. Hemenway*, 353 Or 129, 295 P3d 617, *vac'd as moot*, 353 Or 498, 302 P3d 413 (2013), which modified the exploitation analysis set forth in *Hall*, to frame his arguments. Defendant asserts that *Hemenway* correctly concluded that a court reviewing a consent search must examine both the voluntariness of the consent and whether the police had exploited a prior illegality to obtain that consent. Defendant also agrees with the court's decision in *Hemenway* to disavow the minimal factual nexus analysis required by *Hall*. Defendant argues that the other part of the *Hall* exploitation analysis should be retained, however, because the court in *Hemenway* undervalued the effect of police illegality on a person's decision to consent and moved away from Oregon's focus on vindication of personal rights by incorporating the factor of "purpose and flagrancy" into the exploitation analysis.

Despite the differences between *Hall* and *Hemenway*, defendant argues that the evidence in this case should be suppressed under either analysis. Defendant notes that the officer's unlawful entry into defendant's apartment was close in time to defendant's decision to consent, the officer did not advise defendant that he could refuse consent, and there was no significant intervening event. In addition, defendant notes that the purpose and flagrancy factor weighs in his favor because the officer's unlawful entry denied defendant the opportunity that he should have had to ignore the officer by not answering the door. Moreover, defendant argues, he was groggy and surprised at having been awakened by an officer knocking on his bedroom door in the early morning hours. Thus, defendant asserts, all four exploitation factors favor suppression.

We apply the exploitation analysis set out in *Unger* to determine whether the police exploited their unlawful conduct to obtain defendant's consent to enter his apartment. We undertake that inquiry because, as noted above, the state concedes that the officer acted unlawfully in opening

defendant's exterior apartment door, reaching his hand in, and knocking on defendant's bedroom door. Moreover, on review, defendant does not dispute that he voluntarily consented to the officer's entry into the apartment.

In *Unger*, today we rejected the state's view that voluntary consent generally cures any taint that might have arisen from prior police misconduct. But we also rejected defendant's view that voluntary consent that follows unlawful police conduct generally is the product of exploitation and must lead to suppression, in the absence of intervening or mitigating circumstances, such as *Miranda* warnings or an admonition that consent need not be granted. Instead, we described the considerations relevant to determining whether the police improperly "took advantage of" or "exploited" their unlawful conduct (here, an entry into defendant's apartment) to gain the defendant's consent to search, such that the evidence obtained as a result of that consent should be suppressed. We noted that voluntary consent was an important, but not dispositive consideration, and we examined the nature of the unlawful conduct, including its purpose and flagrancy, the temporal proximity between the unlawful conduct and consent, and the presence of intervening or mitigating circumstances. We also recognized, as we had in *Hall*, that, if the evidence in question inevitably would have been discovered by the police or if the police discovered it through a source independent of defendant's consent, then the evidence should not be excluded on exploitation grounds. *See Unger*, 356 Or at 64.

We applied those considerations in *Unger* and concluded that the evidence in that case did not have to be suppressed. There, four detectives went to the defendant's house in response to a complaint about drug activity and information from an informant that there were children at the house with access to drugs and guns. When knocking on two front doors failed to elicit any response, detectives trespassed onto the defendant's property by following a path around to the back of the house, where they knocked on a sliding glass door. Defendant came to the door, and, after the detectives explained why they were there, defendant consented to the detectives entering the home, then agreed to show the detectives around the house. While walking through the house,

one detective discovered a bag with methamphetamine residue. There, we concluded that the misconduct was limited in extent, nature, and severity because the officers had followed a path around the house without crossing any barriers and the detectives had interacted with the defendant just as they would have at the front door. *Id.* at 89, 91. The detectives' purpose in going to the back door was to contact the defendant, not to make the defendant more likely to consent. *Id.* at 91. Although the consent had been given in close temporal proximity to the illegality, and there were no intervening or mitigating circumstances, under the totality of the circumstances, the state met its burden of showing that the detectives' minimal intrusion did not require suppression. *Id.* at 92.

In contrast, in *State v. Musser*, 356 Or 148, ___ P3d ___ (2014), which we also decided today, we determined that evidence obtained pursuant to a consent search following an unlawful stop must be suppressed. There, an officer saw the defendant and her male companion around 10:00 p.m. in a high-crime area behind a shopping center, and the officer decided to contact them "basically, to make sure they were not doing anything wrong" and because he believed that they might be trespassing. *Id.* at 150, 151. When the officer called out to the defendant, "Hey, I need to talk to you," she walked in the other direction and returned only after he called out to her again. The officer requested the defendant's identification, and while she looked for it in her purse, the officer saw two Crown Royal pouches in the purse. Based on the defendant's nervous and fidgety demeanor, the officer suspected that she likely had drugs in her purse and asked for her consent to search the pouches, where he thought drugs might be located. When he found drug paraphernalia in one of the pouches, he sought and obtained the defendant's consent to search the rest of her purse. The interaction lasted about an hour. *Id.* at 152.

Applying the *Unger* analysis in *Musser*, we noted that the stop was a more severe violation of the defendant's rights than the trespass in *Unger* because the officer had ordered the defendant to come and speak to him rather than continuing in the direction she was going, indicating that she had no choice but to respond to the officer. The stop was

ongoing when the officer requested the defendant's consent, and there were no intervening or mitigating circumstances. In addition, the purpose of the stop was an investigative one—"to make sure they were not doing anything wrong"— which was plainly unlawful in the absence of reasonable suspicion that the defendant was committing a crime. Moreover, the officer's conduct revealed the presence of the pouches in the defendant's purse, which, in part, led the officer to seek her consent. Under the totality of the circumstances, the court concluded that the police had exploited their unlawful stop to obtain consent and therefore that the evidence should have been suppressed. *Id.* at 159.

Here, the consent to the officer's entry into the apartment came very shortly after he unlawfully had reached into the apartment and knocked on defendant's bedroom door. The state makes the point that the unlawful conduct itself was very brief and had ended by the time that the officer and defendant were talking and the officer had asked if he could come in. Defendant responds that the search was close in time to the request. In contrast to cases where the request for consent occurs days after the unlawful conduct, which (other things being equal) suggests that the taint may have dissipated, defendant is correct that the events here were compressed in time. However, the officer's "search," by opening the exterior apartment door and knocking on defendant's bedroom door, had ended. Moreover, the officer was not standing inside the apartment or exercising control over defendant. The facts thus differ from the officer's ongoing unlawful stop of the defendant in *Musser*. Nonetheless, there was temporal proximity between the unlawful police conduct in this case and the consent, which is a consideration suggesting exploitation, but other aspects of the interaction cut in the opposite direction.

Again, the contrast with *Musser* is instructive. Here, although the officer had knocked on the door and twice asked whether defendant was "okay," his actions during the initial "search" were limited and did not demonstrate any effort to control or direct defendant. In *Musser*, the officer essentially ordered the defendant to come to him, and when she did not respond, he ordered her again. The officer unconstitutionally stopped the defendant and exercised control

over her for an hour, during which time he asked for consent to search her purse. In terms of the nature of the police contact, this case has more in common with *Unger*, where the police engaged in an unconstitutional search by trespassing onto the defendant's property to reach a door, where they knocked, and the defendant responded by opening the door. Here, of course, the officer opened the apartment door and reached in to knock on defendant's bedroom door, but that unlawful search was limited in time and severity, which suggests that its illegality was unlikely to have had a significant effect on defendant's consent.

The state concedes that there were no mitigating or intervening circumstances—other than defendant's voluntary consent itself—that might have clearly "purged" the taint of the unlawful conduct. As we did in *Unger*, we observe that police would be well served by giving *Miranda* warnings or advising individuals that they need not consent to a request to search or enter. Such warnings would make it easier for reviewing courts to determine that, notwithstanding any prior illegality, the individual knew that he or she had a constitutional right to refuse consent—and that, if the individual gave consent, it was voluntary and not the product of exploitation.

Another significant circumstance in the exploitation analysis here is that the officer did not gain any information about potentially criminal activity as a direct result of his unlawful search. His knocking on the interior door and asking if defendant was "okay" simply brought defendant to the door of defendant's bedroom, and defendant then agreed to let the officer enter the apartment. It was only *after* defendant had consented to the entry that the officer smelled the marijuana coming from defendant's room, asked for defendant's identification, and noticed the baggie on the floor that looked like it contained marijuana. Thus, in contrast to *Musser*—and similarly to *Unger*—the officer's unlawful conduct did not put him in a position to see contraband or evidence of wrongdoing. Therefore, that conduct did not give police the sort of advantage over defendant in gaining consent that the exclusionary rule of Article I, section 9, is intended to advance.

We also consider the "purpose and flagrancy" of the police misconduct. As noted, the Court of Appeals rejected the state's argument that the officer's warrantless entry into defendant's apartment by knocking on the inner door was justified by the emergency aid exception, *Lorenzo*, 252 Or App at 266-68, and the state does not challenge that conclusion on review. That does not mean, however, that the purpose of the police in seeking to contact defendant is irrelevant to the exploitation analysis. Here, there is no dispute that the officer sought to contact defendant because he was the roommate of a person who had just attempted to commit suicide and the officer was concerned about defendant's safety. That concern was reasonable. There was no suggestion that the officer was pursuing a drug or other criminal investigation when he knocked on defendant's apartment door or when he opened that door and knocked on defendant's bedroom door. Nor was there any suggestion that the police were conducting random searches looking for evidence of criminal behavior. The facts here stand in contrast to *Musser*, where the officer stopped the defendant and a companion, without reasonable suspicion, to make sure that "they were not doing anything wrong." 356 Or at 151. We held that the purpose for the unlawful stop in that case was a consideration supporting the defendant's claim that her later consent was the product of exploitation. *Id.* at 159. This case is more similar (although not identical) to *Unger*, where detectives contacted the defendant because of information that they had received about drugs, children, and guns in his home. Indeed, the purpose of the police conduct here is even more benign than in *Unger*, because the police did not go to defendant's apartment intending to ask for consent to search the apartment.

As to flagrancy, the officer did open the door to defendant's apartment, although his feet apparently remained outside, and knocked on defendant's bedroom door. While any police intrusion into a residence, absent justification not present here, is unlawful, the restrained interaction between police and defendant and the absence of any threats or intimidation do not present the kind of flagrant circumstances that likely would have affected defendant's

voluntary consent in a way that would constitute exploitation of the unlawful conduct.

For the reasons set out above, we conclude that, based on the totality of the circumstances, the state has shown that defendant's consent was not the result of police exploitation of their unlawful conduct. Accordingly, we agree with the trial court that the evidence obtained from the consent search should not be excluded.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**WALTERS, J.,** dissenting.

I respectfully dissent. I accept, as does the majority, that the officer's opening of defendant's apartment door and his knock on defendant's bedroom door violated Article I, section 9, of the Oregon Constitution. I do not agree, however, with the majority's conclusion that that constitutional violation did not give the officer an advantage in gaining defendant's consent to search. *State v. Lorenzo*, 356 Or 134, 144, ___ P3d ___ (2014). Instead, I agree with the Court of Appeals that "the events leading up to defendant's consent to the search of his bedroom flowed quickly and directly from the officer's entry into the apartment" and that "the state did not demonstrate that defendant's consent was independent of the illegality." *State v. Lorenzo*, 252 Or App 263, 270-71, 287 P3d 1133 (2012). Therefore, for the reasons stated in my dissenting opinion in *State v. Unger*, 356 Or 59, 108, ___ P3d ___ (2014) (Walters, J., dissenting), I think that the evidence that the officer obtained as a result must be suppressed.

If the officer's entry were justified by an exception to the warrant requirement, I would not hesitate to uphold admission of the inculpatory evidence that the officer discovered. But I cannot join in an opinion that countenances an unconstitutional intrusion into a private residence and that urges—rather than requires—intervening or mitigating facts, such as *Miranda* warnings or warnings that the resident need not admit the officers. 356 Or at 144.

I respectfully dissent.

Baldwin, J., joins in this opinion.

**BALDWIN, J.,** dissenting.

I dissent from the judgment of the court for the reasons I explained in my dissenting opinion in *State v. Unger*, 356 Or 59, 133, ___ P3d ___ (2014) (Baldwin, J., dissenting).