Argued and submitted November 19, 2015, Portland Community College, Cascade Campus, Portland, reversed and remanded September 14, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARRIE LEE BERG,
*Defendant-Appellant.*

Klamath County Circuit Court
1202888CR; A155735

383 P3d 281

Erin Snyder, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

A jury convicted defendant of possession of methamphetamine, ORS 475.894, delivery of methamphetamine, ORS 475.890, and manufacture of methamphetamine, ORS 475.886. On appeal from the judgment of conviction, defendant assigns error to the trial court's denial of her motion to suppress evidence of the methamphetamine on which the charges against defendant were founded, contending that the trial court erred in concluding that the warrantless stop of defendant's car that led to the discovery of the methamphetamine was permissible under Article I, section 9, of the Oregon Constitution.[1] For the reasons that follow, we agree with defendant and, accordingly, reverse.

The facts pertinent to our resolution are not disputed. Officers discovered the methamphetamine that led to the charges against defendant after searching her car pursuant to a warrant. They obtained that warrant after a drug dog alerted on defendant's car after Officer Rhodes stopped the car. Rhodes stopped the car without a warrant shortly after he had been dispatched to a 9-1-1 hang-up call placed from a pay phone outside Dickey's Market. Rhodes arrived within 90 seconds of receiving the report of the call and observed only one car in the area, parked near the pay phone. As Rhodes approached, he saw a woman—later identified as Holmes—get into the backseat and the car drove away. Rhodes stopped the vehicle almost immediately because he "suspected that the vehicle may have been responsible, someone in the vehicle, of calling 9-1-1." At the time he stopped the vehicle, Rhodes had "no idea" if it was a false use of 9-1-1 or if someone may be in trouble. He just knew "that someone called 9-1-1 and they hung up before they identified a problem" and that he was "dispatched to go see what, if any, problem there was."

Defendant, the driver of the vehicle, had three other passengers with her, one man and two women: Holmgren, Holmes, and Bravo. After defendant identified herself,

---

[1] Defendant also contends that the warrantless stop of her vehicle violated the Fourth Amendment to the Unites States Constitution. We do not address that contention because defendant did not make that argument below.

Rhodes asked if she knew about the 9-1-1 call and she said she did not. Holmes overheard Rhodes asking defendant about the call and admitted to calling 9-1-1 because she "was just messing around." Rhodes nonetheless was concerned for Holmes's safety "because with the number of people in the vehicle [he] had experience where people do not want to speak freely because of someone else near them and they would be afraid of retribution." Rhodes wanted to "make sure that [Holmes] was not in distress, particularly with [Holmgren] in the front seat, because his behavior was suspicious and he was very intense, * * * making a point just to stare straight ahead, not looking at [Rhodes]."

Rhodes radioed for assistance with the stop, and other officers arrived within a few minutes. They separated the occupants of the car to talk to them individually. Holmes continued to represent that she was okay, and said that she had called 9-1-1 because she had been arguing with Bravo. Holmgren became embroiled in a "confrontation" with officers, and he was ultimately taken into custody. Officers then used a drug dog to inspect the exterior of the vehicle. As noted, the dog alerted on the vehicle, officers obtained a warrant to search it, and, in the course of that search, uncovered methamphetamine, drug paraphernalia, and $1,440 in a bag under the driver's seat. That, in turn, led to the charges against defendant.

Before trial, defendant moved to suppress the evidence of the methamphetamine on the ground that Rhodes's warrantless stop of her car violated Article I, section 9, requiring the suppression of all subsequently-discovered evidence. The state opposed the motion, arguing that the stop was justified either because Rhodes had reasonable suspicion that someone in the car had committed a crime by improperly calling 9-1-1, or under the community caretaking statute, ORS 133.033, together with the emergency aid exception to the warrant requirement. The trial court denied the motion, concluding that the hang-up 9-1-1 call permitted Rhodes to stop defendant's car, which was the only car in the area, without a warrant. The evidence was admitted at defendant's ensuing trial, and defendant was convicted on all charges.

On appeal, defendant contends that the facts proved by the state on the motion to suppress are, as a matter of law, insufficient to establish either that Rhodes's stop of defendant's car was supported by reasonable suspicion that someone in the car had committed a crime, or that the emergency aid exception to the warrant requirement authorized the stop. In response, the state concedes that the trial court erred in concluding that Rhodes had reasonable suspicion that one of the occupants of the car had committed a crime, and also that the trial court erred in concluding that the emergency aid exception to the warrant requirement applied to authorize Rhodes's warrantless stop of defendant's car. However, the state argues that we should affirm on an alternative ground that the state did not advance in the trial court: that Rhodes's stop of the car was not a seizure for purposes of Article I, section 9, and, consequently, neither a warrant nor an exception to the warrant requirement was necessary to authorize the stop.

As to the state's concessions, our review of the record confirms that they are well taken.

First, regarding whether Rhodes had reasonable suspicion to stop the vehicle, "[a]n officer has reasonable suspicion to stop a person when the officer has an objectively reasonable belief, based on specific and articulable facts, that the person has committed or is about to commit a crime. The officer's suspicion must be particularized to the person and based on the person's conduct." *State v. Martin*, 260 Or App 461, 469-70, 317 P3d 408 (2014) (internal citations omitted). Here, Rhodes admitted that he had "no idea" if someone in the car falsely used 9-1-1 or if, instead, someone might be in trouble, an admission that precludes the conclusion that Rhodes had an "objectively reasonable belief" that defendant or one of her passengers "committed or [was] about to commit a crime."

Second, regarding whether the emergency aid exception authorized the stop, the Article I, section 9, emergency aid exception applies when an officer has an "objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who

are imminently threatened with suffering, serious physical injury or harm." *State v. Baker,* 350 Or 641, 649, 260 P3d 476 (2011) (footnote omitted). The officer must "subjectively believe that his or her assistance is necessary to protect someone's life and that belief, evaluated at the time of entry and not in light of subsequently discovered facts, must be reasonable." *State v. Martin,* 222 Or App 138, 148, 193 P3d 993 (2008). Here, again, Rhodes's admission that he had "no idea" whether defendant or one of her passengers inappropriately used 9-1-1 or whether, instead, someone was in need of help precludes the conclusion that Rhodes "subjectively believe[d] that his [] assistance [was] necessary to protect someone's life," thereby also precluding the conclusion that the emergency aid exception authorized the warrantless stop of defendant's car.

That leaves the state's proposed alternative basis for affirmance: that the stop of defendant's car to investigate the hang-up 9-1-1 call was not so intrusive to amount to a seizure for purposes of Article I, section 9. Specifically, the state argues that "[t]he officer's act of stopping the car to ensure the welfare of its occupants simply did not rise to the level of a constitutional 'seizure.'" The state further argues that, "[w]hile the stop of her car may have annoyed or inconvenienced defendant, a reasonable motorist would not have perceived the investigatory stop as a significant interference with her liberty."

The state did not advance that argument below. Therefore, for us to affirm on that basis, we first must be persuaded that the record would "materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 660, 20 P3d 180 (2001).

We are not so persuaded here. It is well-established under Oregon law that a "stop" of a car is a seizure for purposes of Article I, section 9. *State v. Ashbaugh,* 349 Or 297, 308-09, 244 P3d 360 (2010) (explaining that a "stop" is a seizure for purposes of Article I, section 9). At the suppression hearing, the state did not dispute that defendant had been stopped (thus, necessarily, seized) when Rhodes pulled over

her car; according to the state, the only issue for the court was whether that stop was lawful. The parties had no reason to develop the particular facts that would be pertinent to the determination of whether Rhodes's interaction with defendant amounted to a seizure, that is, whether a reasonable motorist in defendant's position would view Rhodes's conduct as a significant interference or restraint on her liberty. *See State v. Blair/Vanis*, 171 Or App 162, 172, 14 P3d 660 (2000) (stating applicable standard). As a result, we are not convinced that the record we have is "the same one that would have been developed" if the state had disputed below whether the encounter between Rhodes and defendant amounted to a seizure. For that reason, we decline to consider the state's proposed alternative basis for affirmance.

In sum, accepting the state's concessions of error, we conclude that the trial court erred by denying defendant's motion to suppress. That error was not harmless because the evidence of methamphetamine found in defendant's car was central to the state's case against defendant on all charges against her. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (error is harmless only if there is "little likelihood" that the error affected the verdict). We therefore reverse and remand as to all convictions.

Reversed and remanded.